**CONSECO, INC., et al., Appellants–Plaintiffs,**

v.

**Russ HICKERSON, Appellee–Defendant.**

No. 29A04–9802–CV–85.

Court of Appeals of Indiana.

Aug. 14, 1998.

Steven K. Huffer, Robert F. Dolack, Huffer & Weathers, P.C., Indianapolis, for Appellants–Plaintiffs.

Arend J. Abel, Bruce W. Longbottom, S. Andrew Burns, Leagre Chandler & Millard, Indianapolis, Appellee–Defendant.

## OPINION

GARRARD, Judge.

Conseco, Inc. et al. ("Conseco") appeals the trial court's order finding that it did not have personal jurisdiction over the defendant, Russ Hickerson ("Hickerson"), and the trial court's denial of Conseco's petition for a preliminary injunction.

We affirm.

## FACTS

Conseco filed suit against Hickerson on December 12, 1997, in Indiana[1], alleging trademark dilution and infringement, commercial disparagement, defamation, and tortious interference with contractual relationships. These claims all involved an Internet web site published by Hickerson, a resident of Texas, which mentioned Conseco and one of its subsidiaries, Philadelphia Life Insurance Company ("Philadelphia Life"). Hickerson's web site sought information concerning fraud or other evidence of unfair treatment by Philadelphia Life or any of Conseco's other insurance subsidiaries. The web site further explained that Hickerson sought this information to aid in a lawsuit he had filed against Philadelphia Life as the trustee of his father's estate. To aid in the gathering of information, the web site included a mailto link enabling the web site reader to send Hickerson e-mail. Hickerson's web site did not advertise or offer any product, or seek any money. Conseco's suit was based upon Hickerson's use of Conseco's trademarked name, "Conseco Inc.," in the text of his web site.

After filing its complaint, Conseco sought and received a temporary restraining order against Hickerson. The trial court then set a

---

1. Conseco was incorporated in Indiana and has its principal place of business in Carmel, Indiana. Through its various subsidiary insurance companies and their policyholders, Conseco does business throughout the United States.

date for a preliminary injunction hearing and ordered Hickerson to file his response. Hickerson responded by filing an affidavit and exhibits. A hearing was held on December 24, 1997, but no further evidence was submitted. After the hearing and with the permission of the trial court, Hickerson filed a post-hearing brief contesting personal jurisdiction and Conseco's petition for a preliminary injunction. On January 6, 1998, the trial court entered its order, finding that it did not have personal jurisdiction over Hickerson and denying Conseco's request for a preliminary injunction. Conseco appeals this decision.

## ISSUE

Conseco raises two issues[2] on appeal, but because we find the personal jurisdiction issue to be dispositive, we will discuss only that issue:

I. Whether Hickerson's use of Conseco's trademarked name in his web site was sufficient to support personal jurisdiction in Indiana.

## DISCUSSION

Conseco claims that the trial court erred by determining that it did not have personal jurisdiction over Hickerson. To support this claim, Conseco argues that the tortious effects of Hickerson's defamatory comments were sufficient under the "effects test" of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) to sustain the exercise of personal jurisdiction over Hickerson in Indiana. Hickerson argues that the "effects test" should not be applied in this case and that his web site, absent other contacts with Indiana, was not sufficient to support personal jurisdiction in Indiana.

■ In Indiana, jurisdiction is presumed and the plaintiff's burden to prove jurisdiction does not arise until the defendant challenges jurisdiction. *Harold Howard Farms v. Hoffman*, 585 N.E.2d 18, 20 (Ind.Ct.App.

1992). Indiana courts must rely upon Indiana Trial Rule 4.4(A), Indiana's long-arm statute, in order to gain personal jurisdiction over a non-resident. *Yates–Cobb v. Hays*, 681 N.E.2d 729, 732 (Ind.Ct.App.1997). "The purpose of T.R. 4.4(A) is to extend jurisdiction to the boundaries permitted by the due process clause of the Fourteenth Amendment." *Id.* "Due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit will not offend the traditional notions of fair play and substantial justice." *Harold Howard Farms*, 585 N.E.2d at 20(citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum contact requirement is meant to insure that the defendant has purposefully availed him or herself of the jurisdiction of the forum state. *Id.* "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely on the basis of random, fortuitous or attenuated contacts...." *Yates–Cobb*, 681 N.E.2d at 732–33.

■ The issue presented by this appeal is whether the mention of an Indiana corporation in an Internet web site without any other contact with Indiana is a minimum contact sufficient to support personal jurisdiction in Indiana over a Texas resident. Based upon our research, this issue appears to be a question of first impression in Indiana.[3] Conseco argues that Indiana had personal jurisdiction over Hickerson because the tortious effects of the allegedly defamatory comments in his web site were felt at Conseco's Carmel, Indiana headquarters. To support this argument, Conseco relies upon several cases which utilize the *Calder* "effects test." We will discuss each of these cases in turn.

Conseco first relies upon *Indianapolis Colts v. Metro. Baltimore Football*, 34 F.3d 410 (7th Cir.1994). In that case, the Indianapolis Colts filed a trademark infringement

---

2. Conseco also challenges the trial court's denial of its petition for a preliminary injunction. Because, as discussed below, the trial court did not have personal jurisdiction over Hickerson, the trial court properly denied Conseco's petition.

3. As one court noted, "the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123 (W.D.Pa.1997).

suit in Indiana against the Baltimore Canadian Football team because the Baltimore team wanted to use the name "Colts" for its team. Baltimore's only contacts with Indiana would have been the national television broadcasts of its football games and any football merchandise that might have been sold in Indiana. Relying upon the *Calder* "effects test," the court found that because the effects of the trademark infringement would be felt primarily in Indiana and because of the contact through the national broadcasts, Indiana had personal jurisdiction over the Baltimore team. This case is distinguishable, however, because it did not involve the Internet and does not discuss the unique question of personal jurisdiction through the Internet.

Recognizing the unique nature of the Internet and the problems it creates for determining personal jurisdiction, the remaining cases relied upon by Conseco concern the Internet. Conseco claims that we should apply the "effects test" much like the courts in *EDIAS Software Intern. v. BASIS Intern., Ltd.*, 947 F.Supp. 413 (D.Ariz.1996) and *Panavision Intern. L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir.1998). We first note that *EDIAS* is readily distinguishable because the *EDIAS* court did not rely solely upon the "effects test" in order to find personal jurisdiction. In *EDIAS*, Edias filed suit against Basis in Arizona for allegedly defamatory comments made on Basis' web site and through e-mails. Though the *EDIAS* court did discuss the "effects test" in its analysis, it also noted that the e-mails, phone calls and faxes sent into Arizona, and merchandise sold in Arizona, were also contacts supporting personal jurisdiction over Basis in Arizona. Because the *EDIAS* court found other contacts to support personal jurisdiction independent of the "effects test," *EDIAS* is not applicable.[4]

In *Panavision*, Panavision, a corporation based in California involved in providing film equipment to the movie industry, filed suit against Toeppen, an Illinois resident, in California. Panavision's suit was based on Toeppen's acquisition of Internet domain names identical to Panavision's trademarked names and his attempt to force Panavision to pay him a large sum in return for his release of those domain names. The evidence showed that Toeppen was a "cyber pirate" who obtained domain names of trademarked corporations and then forced those corporations to pay him to release the domain names to them. The *Panavision* court stated that simply registering a corporation's trademark as a domain name and posting a web site would not be sufficient to support personal jurisdiction over a non-resident defendant. *Panavision*, 141 F.3d at 1322. The court stated that something more would be required to gain personal jurisdiction. *Id.* In that case, the *Panavision* court found that Toeppen had engaged in a scheme to extort money from Panavision. This scheme was aimed at California where Panavision was located. The court then discussed the "effects test" and found that California had personal jurisdiction over Toeppen. Though *Panavision* does involve the use of the effects test, the court appears to have relied upon an additional factor, Toeppen's purposefully aiming his extortion scheme at Panavision in California. We are not presented here with purposefully directed activity such as in *Panavision* and, thus, *Panavision* is distinguishable.

We also decline to apply the "effects test" because we believe that it is not readily applicable in cases involving national or international corporations and the Internet. The "effects test" does not apply with the same force to a corporation as it does to an individual because a corporation's harm is generally not located in a particular geographic location as an individual's harm would be. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir.1997). In this case, Conseco is a national corporation with insurance subsidiaries and policyholders located throughout the United States. The potential harm to be suffered by Hickerson's alleged defamation would not only be suffered in Indiana, but throughout the nation. Because we find the authority relied upon by

4. We also note that in *EDIAS* the court was faced with a situation where it was clear that Basis purposefully directed, at least, some of its activities towards the forum state. We are not confronted with such purposefully directed activity here.

Conseco to be distinguishable and that the "effects test" is not suitable in this case, we decline to apply the "effects test." Instead, we choose to follow *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997).

In *Cybersell,* Cybersell, an Arizona company, filed suit in Arizona against Cybersell of Florida for its use of Cybersell Az.'s trademarked name in its web site.[5] Cybersell Fl.'s only contact with Arizona was its use of an Arizona company's trademarked name in its web site. Arizona's long-arm statute, like Indiana's, sought to expand personal jurisdiction to the limits of due process so that, like here, the *Cybersell* court was left to resolve the boundaries due process placed upon personal jurisdiction when dealing with the Internet. Additionally, the *Cybersell* court was also confronted with an "effects test" argument. The *Cybersell* court found that the "effects test" was not appropriate in this context. *Id.* at 420.

■ In order to determine whether there are sufficient contacts to warrant the exercise of personal jurisdiction when dealing with an interactive web site[6], courts look at the level of interactivity of the site and commercial nature of the information exchange. *Id.* at 418; *Zippo Mfg. Co.,* 952 F.Supp. at 1124. The *Cybersell* court noted that based upon its research, it was unaware of any other court holding that an Internet advertisement alone was sufficient to support the exercise of personal jurisdiction over a nonresident defendant. *Cybersell,* 130 F.3d at 418. "Rather, in each, there has been 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.*; *Blumenthal v. Drudge,* 992 F.Supp. 44, 56 (D.D.C.1998). Recognizing that anyone could access Cybersell Fl.'s web site, the *Cybersell* court stated that it could not see how it could be inferred that Cybersell Fl. purposefully directed its efforts towards Arizona. *Cybersell,* 130 F.3d at 419. The court then held that Cybersell Fl. had not purposefully availed itself of the benefits and protections of Arizona law and, therefore, Arizona did not have personal jurisdiction over Cybersell Fl. *Id.* The court noted that had it found that Arizona had personal jurisdiction, "every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located. That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state." *Id.* at 420.

In the present case, the facts are almost identical to those in *Cybersell.*[7] Hickerson's only contact with Indiana was his discussion of Conseco in his web site. Hickerson did not direct any advertising, send any e-mails or letters, or make any phone calls to Indiana. In addition, Hickerson had never physically visited or resided in Indiana. Hickerson simply did not purposefully avail himself of the benefits and protections of Indiana law. We hold that Hickerson's discussion of Conseco in his web site, without any other contacts, was not a minimum contact sufficient to allow Indiana to exercise personal jurisdiction over him. The trial court, therefore, correctly determined that it did not have personal jurisdiction over Hickerson.

Affirmed.

HOFFMAN and STATON, JJ., concur.

---

5. Like the *Cybersell* court, we will refer to the Arizona Cybersell as Cybersell Az. and the Florida Cybersell as Cybersell Fl.

6. We assume, for the purposes of this appeal only, that the inclusion of the mailto link in Hickerson's web site made the web site interactive.

7. Though Hickerson's web site does not appear to be commercial in nature, we will assume that it is for the purposes of our analysis because we find that even if it was commercial in nature, the web site was not sufficient to support the exercise of personal jurisdiction.