**BANKMARK OF FLORIDA, INC.,**
Appellant–Defendant,

v.

**STAR FINANCIAL CARD SERVICES,**
INC., Appellee–Plaintiff.

No. 27A02–9605–CV–271.

Court of Appeals of Indiana.

May 13, 1997.

H. Joseph Certain, Therese L. Pryor, Kiley, Kiley, Harker, Michael & Certain, Marion, for Appellant–Defendant.

James T. Beaman, Beaman & Todd, Marion, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Today, we address the question of whether a trial court may assert personal jurisdiction over a party based on the party's failure to comply with a discovery order. Specifically, appellant-defendant Bankmark of Florida, Inc. appeals the trial court's denial of its motion to dismiss for lack of personal jurisdiction and its grant of summary judgment in favor of appellee-plaintiff Star Financial Card Services, Inc. Bankmark presents several issues for our review, which we restate as follows: (1) whether the trial court erred in determining that it had personal jurisdiction over Bankmark; (2) whether Star's motion for summary judgment was based on inadmissible evidence; and (3) whether a genuine issue of material fact exists which precludes summary judgment.

### FACTS

Bankmark is a Delaware corporation which maintains its principal place of business and sole office in Florida. It is engaged in the business of providing administrative services for several companies that sell their merchandise through credit card transactions. Specifically, Bankmark validates the companies' telephone credit card sales and then electronically forwards the validated sales information to a processing center, where the customer's credit card is charged and Bankmark's account is credited for the sales price of the merchandise.

In October 1993, Gerry Stevenson of H.M.S., Inc., a soliciting organization acting on behalf of Star, an Indiana corporation, contacted Sidney Abusch, an officer of Bankmark, with regard to Star providing processing services for Bankmark. Shortly thereafter, Bankmark and Star entered into a "Merchant Agreement" whereby Star agreed to process the credit card charge slips sub-mitted by Bankmark and credit Bankmark's account for the sales price less a processing fee. Under the terms of the agreement, Bankmark warranted that each charge slip submitted to Star represented a bona fide sale of merchandise or services for the amount shown on the credit card slip and agreed to hold Star harmless and indemnify it for any claim or defense interposed by a cardholder. Further, the agreement contained a choice of law provision which provided that the agreement would be construed under Indiana law.

Shortly after Star began processing the credit card slips submitted by Bankmark, cardholders began refusing to pay for their purchases for various reasons. As a result, Star reimbursed the cardholders and sought reimbursement from Bankmark. When Bankmark refused to reimburse Star for the "charge backs" and pay its other fees, Star canceled the agreement and stopped processing Bankmark's credit card slips.

On December 27, 1994, Star filed suit against Bankmark,[1] alleging breach of contract, unjust enrichment, fraud, civil R.I.C.O.[2] and a civil action for criminal conversion.[3] In response, Bankmark filed a motion to dismiss, claiming that the trial court did not have personal jurisdiction over it. Shortly thereafter, on May 15, 1995, Star filed a request for production of documents in order to obtain information pertaining, in part, to the alleged lack of personal jurisdiction. When Bankmark failed to respond by July 17, 1995, Star filed a motion to compel the production of the documents.

Thereafter, on September 6, 1995, Star filed a motion for summary judgment on the grounds that Bankmark defaulted on its obligations under the Merchant Agreement. The trial court then scheduled a combined hearing on the motion for summary judgment and Bankmark's motion to dismiss. However, Bankmark's counsel did not re-

---

1. Star's complaint also names Sidney Abusch, Darla J. Leonard and Donald Pollack, officers of Bankmark, as defendants. However, they are not parties to this appeal.

2. Indiana's civil R.I.C.O. statute, IND.CODE § 34–4–30.5–5, allows an aggrieved individual to bring

a civil action against a person who has violated Indiana's corrupt business influence statute, IND. CODE § 35–45–6–1.

3. IND.CODE § 34–4–30–1 provides that "a person [who] suffers a pecuniary loss as a result of a violation of I.C. 35–43 ... may bring a civil action against the person who caused the loss."

ceive notice of the hearing and, as a result, failed to attend. The court then contacted counsel for Bankmark via telephone on November 16, 1995, after which it granted Star's motion to compel and ordered Bankmark to produce the requested documents within fifteen days. The court also gave each party thirty days to request additional oral argument or file additional briefs and affidavits with regard to Star's motion for summary judgment and Bankmark's motion to dismiss.

On December 22, 1995, Star filed a motion for default judgment based upon Bankmark's failure to respond to its discovery requests and complaint. Thereafter, Bankmark filed a response to the motion for default judgment and requested a hearing on its motion to dismiss. On January 3, 1996, Bankmark informed counsel for Star that the documents it requested were available for inspection.

On February 7, 1996, the trial court entered findings of fact and conclusions of law, denying Bankmark's motion to dismiss for lack of personal jurisdiction as a sanction under Ind.Trial Rule 37(B)(2)(b) for Bankmark's failure to produce the requested documents and because the Merchant Agreement between Bankmark and Star provided that it would be construed under Indiana law. The trial court then granted Star's motion for summary judgment. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Personal Jurisdiction

Bankmark contends that the trial court erred in denying its motion to dismiss for lack of personal jurisdiction. Specifically, Bankmark argues that the trial court did not have the authority under T.R. 37(B)(2)(b) to prohibit it from maintaining its motion to dismiss as a sanction for failing to comply with the trial court's discovery order. Alternatively, Bankmark argues that even if T.R. 37 permits the dismissal of a claim, the trial court's imposition of the sanction in the present case was an abuse of discretion.

■ Initially, we note our standard of review. Here, the record reveals that the trial court entered special findings of fact and conclusions of law on its own motion. When the trial court has entered findings on its own motion, the specific findings control only as to the issues they cover and the general judgment controls as to the issues upon which the court has not made findings. *Ford v. Peoples Trust and Savings Bank,* 651 N.E.2d 1193, 1194 (Ind.Ct.App.1995), *trans. denied.* The specific findings will not be set aside unless they are clearly erroneous and we will affirm the general judgment on any legal theory supported by the evidence. *Id.* A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it. *In the Matter of M.B.,* 666 N.E.2d 73, 76 (Ind.Ct.App.1996), *trans. denied.* A judgment is clearly erroneous when it is not supported by the findings of fact or the conclusions relying on those findings. *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994). In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses; rather, we consider only the evidence and reasonable inferences drawn therefrom which support the verdict. *Coffin v. Hollar,* 626 N.E.2d 586, 589 (Ind.Ct.App. 1993).

■ Additionally, we note that Bankmark had the burden of proving the trial court's lack of personal jurisdiction. *Fidelity Financial Services, Inc., v. West,* 640 N.E.2d 394, 396 (Ind.Ct.App.1994). Thus, Bankmark is appealing from a negative judgment. To prevail on an appeal from a negative judgment, a party must establish that the evidence is without conflict and leads only to a result opposite that reached by the trial court. *Matter of Estate of Borom,* 562 N.E.2d 772, 773–74 (Ind.Ct.App.1990).

### A. Authority Under Trial Rule 37

We first address Bankmark's contention that the trial court could not assert personal jurisdiction over it as a T.R. 37(B)(2) sanction for failing to comply with its discovery order. Specifically, Bankmark contends that, absent a finding that it had waived its jurisdictional objection or that it had sufficient "minimum contacts" with the State of Indiana, the trial court did not have the power to impose a sanction on Bankmark.

■ It is axiomatic that an Indiana court must have personal jurisdiction over a defendant in order to render a valid judgment against a defendant. *Freemond v. Somma,* 611 N.E.2d 684, 687 (Ind.Ct.App. 1993), *trans. denied.* As a general rule, in order to establish personal jurisdiction, the evidence must show that the defendant has sufficient minimum contacts with the forum State such that it has purposefully availed itself of the State's laws, *Tietloff v. Lift A–Loft Corp.,* 441 N.E.2d 986, 989 (Ind.Ct.App. 1982), or that the defendant has consented or waived its objection to jurisdiction. *Mechanics Laundry & Supply, Inc. v. Wilder Oil Co., Inc.,* 596 N.E.2d 248, 251 (Ind.Ct.App. 1992), *trans. denied; Schneider v. Schneider,* 555 N.E.2d 196, 199 (Ind.Ct.App.1990).

However, the United States Supreme Court has addressed another method by which trial courts may acquire personal jurisdiction. In *Insurance Corp. of Ireland, Ltd., et al. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the Court held that a district court had the authority, pursuant to Federal Rule 37(b)(2)(A), to presume that personal jurisdiction over a party had been established as a result of that party's failure to comply with a discovery order. In reaching its decision, the Court explained that personal jurisdiction, unlike subject matter jurisdiction, is not a limitation on the sovereignty of the judicial branch, but rather is a restriction on judicial power as a matter of individual liberty. *Id.* at 702, 102 S.Ct. at 2104. As an individual liberty interest, personal jurisdiction, like other individual rights, is subject to procedural rules and a party may intentionally waive or be estopped from asserting such a right. *Id.* at 704, 706, 102 S.Ct. at 2105, 2106. The Court then explained that by submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, a party agrees to abide by the court's determinations with regard to the jurisdictional issue. *Id.* at 706, 102 S.Ct. at 2106. Therefore, by failing to comply with the court's discovery order related to jurisdictional facts, a defendant's actions, or lack thereof, may amount to a legal submission to the jurisdiction of the court. *Id.* at 704–06, 102 S.Ct. at 2105–06.

The Court also explained that its decision was not intended to alter the requirement that there be minimum contacts between the forum State and the nonresident defendant. *Id.* at 702 n. 10, 102 S.Ct. at 2104 n. 10. Rather, Rule 37 provided a mechanism whereby the facts needed to show minimum contacts could be established when a defendant failed to comply with court-ordered discovery. *Id.* As the Court stated, the failure to comply with the court's discovery order supports a "presumption that the refusal to produce evidence ... was but an admission of the want of merit in the asserted defense." *Id.* at 709, 102 S.Ct. at 2107 (quoting *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 351, 29 S.Ct. 370, 380, 53 L.Ed. 530 (1909)).

■ Although *Ins. Corp. of Ireland* concerned Fed.R.Civ.P. 37, we find the Court's rationale persuasive and equally applicable to T.R. 37(B). Like the federal rule, T.R. 37 permits trial courts to impose various sanctions upon parties who fail to comply with discovery, including striking out pleadings, prohibiting a party from supporting designated defenses, dismissing the action or rendering a default judgment against the disobedient party. T.R. 37(B)(2)(b) and (c); *Rivers v. Methodist Hospitals, Inc.,* 654 N.E.2d 811, 814 (Ind.Ct.App.1995). Both Fed.R.Civ.P. 37 and T.R. 37 provide these sanctions to insure that both parties have an efficient and fair opportunity to present their claims. Given the nature of personal jurisdiction as an individual right and the consequences involved in a successful challenge to the court's jurisdiction, a party asserting such a challenge must comply with our procedural rules and is subject to the available sanctions for failure to comply. Therefore, we hold that the trial court may properly presume, if the requirements of T.R. 37(B)(2) are satisfied, that the defendant's failure to comply with the court's discovery orders is an admission that its challenge to the court's jurisdiction is meritless. As a result, a trial court may prohibit a party from maintaining its motion to dismiss for lack of jurisdiction as a discovery sanction.

### B. Application of T.R. 37

Even though we conclude that T.R. 37 may be applied to support a finding of personal

jurisdiction, the question remains as to whether the rule was properly applied under the circumstances of this case. According to Bankmark, the trial court's imposition of the sanction in the present case was improper because it failed to impose a lesser sanction first. Bankmark also argues that the sanction was improper because (1) the trial court erroneously concluded that Bankmark failed to produce the requested documents, (2) the trial court never warned Bankmark of the possible sanction and (3) the sanction was imposed without a hearing.

■■■ In support of its contention that the trial court was required to impose a lesser sanction before dismissing its jurisdictional challenge, Bankmark relies on language in this court's decision in *Breedlove v. Breedlove*, 421 N.E.2d 739, 741–42 (Ind.Ct.App. 1981), where we stated that, pursuant to T.R. 37(B)(4), a trial court must impose a less drastic sanction than dismissal or default if a lesser sanction would be effective. However, Bankmark's reliance on *Breedlove* is misplaced. Since that decision, T.R. 37 has been substantially rewritten and no longer requires a trial court to impose a lesser sanction before dismissing an action or entering a default judgment, especially where the "disobedient party has demonstrated contumacious disregard for the court's orders." *Rivers*, 654 N.E.2d at 814 (quoting *Nesses v. Specialty Connectors Co., Inc.*, 564 N.E.2d 322, 327 (Ind.Ct.App.1990); *Stout v. A.M. Sunrise Const. Co., Inc.*, 505 N.E.2d 500, 503 (Ind.Ct.App.1987), *trans. denied, cert. denied*, 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989)). Further, we note that the decision in *Breedlove* and subsequent decisions that have employed a contumacious disregard standard, involved sanctions of dismissal or default judgment, both of which end a party's opportunity to be heard. *Rivers*, 654 N.E.2d at 814. Here, the trial court did not enter a default judgment against Bankmark or otherwise prevent Bankmark from defending against Star's claim on the merits; rather, it merely prohibited Bankmark from maintaining its jurisdictional challenge. Therefore, the trial court was not required to impose a lesser sanction first.

■■■ However, we must still determine whether the trial court erred in imposing the sanction in the present case. The choice of an appropriate sanction for a discovery violation is a matter committed to the sound discretion of the trial court. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). The only limitation on the trial court in determining an appropriate sanction is that the sanction must be just. T.R. 37(B)(2); *Drew*, 661 N.E.2d at 595. In determining whether the finding of personal jurisdiction in *Ins. Corp. of Ireland* was a just sanction under Fed.R.Civ.P. 37(B), the Court considered the following: (1) the sanctioned party's opportunity to comply with the discovery request and the court's orders; (2) the sanctioned party's previous agreements to cooperate with discovery; (3) the merits of the respondent's claim that the trial court had personal jurisdiction over the sanctioned party; and (4) the warnings given to the sanctioned party prior to issuance of the sanction. *Ins. Corp. of Ireland*, 456 U.S. at 707–08, 102 S.Ct. at 2106–07.

■■■ Here, the record reveals that Bankmark was given more than five and one-half months to respond to Star's request for documents. The record also reveals that Bankmark, in its request for an extension of time, agreed to produce the requested documents by July 17, 1995. Nevertheless, Bankmark repeatedly failed to produce the documents, even after the court granted Star's motion to compel.[4] Indeed, Bankmark only produced the documents after Star filed its motion for default judgment on December 22, 1995. Further, we note that nothing in the record indicates that Bankmark needed more time to comply with the request, that it ever objected to the documents requested, or that Star was improperly using the discovery pro-

---

4. Bankmark contends that the trial court's finding that it failed to produce the requested documents was clearly erroneous because it informed Star that the requested documents were available for inspection on January 3, 1996. As a result, Bankmark contends that the trial court should not have imposed a sanction. However, given Bankmark's repeated failure to produce the requested documents over a five and one-half month period and its disregard for the court's order to produce the documents by December 1, 1995, we find this argument unpersuasive.

cess. Under these circumstances, we cannot conclude that the trial court abused its discretion by preventing Bankmark from maintaining its jurisdictional challenge.

Nevertheless, Bankmark argues that the trial court's decision should be set aside because it did not warn Bankmark of the possible sanction. Although this court has previously stated that we would not find that a sanction of dismissal or default was unjust where a party had been warned of the consequences for failing to comply with a court order, *Drew*, 661 N.E.2d at 595, we have not stated that notice is required in every case. More important, unlike dismissal or default, the sanction in the present case did not preclude Bankmark from defending against Star's claim. Considering that Bankmark had ample opportunity to produce the requested documents and should have known that it risked sanctions for its failure to comply with the court's order, we cannot conclude that the trial court's decision should be set aside because it did not expressly warn Bankmark of the sanction.

Finally, Bankmark argues that the trial court erred because it failed to conduct a hearing on sanctions or Bankmark's motion to dismiss prior to imposing a sanction. In support of its argument, Bankmark cites *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), for the proposition that due process is violated when a party is precluded from asserting lack of jurisdiction without a hearing. We note, however, that *Rogers* involved the dismissal of the plaintiff's complaint, which, as previously stated, is a harsher sanction than the one imposed in the present case. Additionally, we note that the Court in *Rogers* did not establish a requirement of a hearing prior to

imposing a sanction. Instead, the Court merely recognized that "there are constitutional limitations upon the power of the courts ... to dismiss an action" because it denies "a party the opportunity for a hearing *on the merits* of his cause." *Id.* at 209, 78 S.Ct. at 1094 (emphasis added). Here, as previously stated, Bankmark could still defend against Star's claim on the merits.

Moreover, given that Bankmark had already informed the court of its reasons for failing to comply with the discovery order in its response to Star's motion for default judgment, we fail to see how Bankmark was harmed by the lack of a hearing on sanctions.[5] Finally, Bankmark cannot complain about the court's failure to conduct a hearing on its motion to dismiss given the fact that its own actions prevented Star from responding to its jurisdictional challenge and, thus, precluded a hearing on the matter.[6]

## II. Summary Judgment

Bankmark also contends that the trial court erred in granting Star's motion for summary judgment. In particular, Bankmark contends that the affidavits supporting Star's motion for summary judgment were inadmissible and that a genuine issue of material fact precluded summary judgment. We address each contention in turn.

### A. Admissibility of Affidavits

First, Bankmark contends that the affidavits supporting Star's motion for summary judgment were improperly admitted because they did not comply with Ind.Trial Rule 56(E). Specifically, Bankmark argues that the affidavits (1) contained improper references to an offer of compromise made by

5. Even had the trial court held a hearing, Bankmark's proffered explanation for failing to comply with the court's order does not justify its actions. In its response to Star's motion for default judgment, Bankmark explained that it had failed to comply with the court's order because local counsel for Bankmark had difficulty in informing Bankmark's general counsel in Florida of the court's order. R. at 112–16. However, local counsel for Bankmark was aware of the court's order and was responsible for insuring that Bankmark complied in a timely manner. More importantly, Bankmark was aware of its obligation to produce the documents

more than five months before the court issued its order compelling production. Thus, we find Bankmark's claim that it was unaware that it was required to produce the documents to be disingenuous.

6. Bankmark also contends that the trial court erroneously concluded that it had personal jurisdiction as a result of the choice of law provision in the Merchant Agreement. Having concluded that the trial court did not err in prohibiting Bankmark from maintaining its jurisdictional challenge, we need not address this argument.

Bankmark, (2) were not based on the personal knowledge of the affiants, (3) contained legal conclusions instead of a statement of facts, and (4) contained inadmissible hearsay.

Under T.R. 56(E), affidavits supporting or opposing a summary judgment motion must be made upon the personal knowledge of the affiant, must affirmatively show that the affiant is competent to testify as to the matters covered in the affidavit and must set forth facts which would be admissible in evidence. *L.K.I. Holdings, Inc. v. Tyner,* 658 N.E.2d 111, 117 (Ind.Ct.App. 1995), *trans. denied.* As a general rule, a court should disregard any inadmissible information contained in the affidavit. *LeMaster v. Methodist Hospital, Inc.,* 601 N.E.2d 373, 376 (Ind.Ct.App.1992). However, a party complaining that an affidavit is defective has a duty to direct this complaint to the trial court, and the failure to do so constitutes waiver. *Id.*

Here, the record reveals that Bankmark failed to respond to Star's motion for summary judgment or otherwise object to its affidavits. Thus, even if the affidavits contained inadmissible evidence, Bankmark has waived any error in their admission. *See American Management, Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 429 (Ind.Ct.App.1996) (party's failure to file motion to strike · or otherwise object to affidavit on grounds that affidavit was not based on personal knowledge resulted in waiver of issue on appeal); *Enderle v. Sharman,* 422 N.E.2d 686, 691 (Ind.Ct.App.1981) (failure to object to abstract of title offered in support of summary judgment motion on grounds that abstract violated best evidence rule and constituted hearsay resulted in waiver on appeal). As a result, we cannot conclude that the trial court erred in considering Star's affidavits.[7]

### B. Genuine Issue of Material Fact

Bankmark also contends that a genuine issue of material fact precluded the trial court's grant of summary judgment because an affidavit it filed in support of its motion to dismiss for lack of personal jurisdiction directly contradicts the affidavit filed by Star in support of its motion for summary judgment. In response, Star argues that the trial court properly ignored Bankmark's affidavit because Bankmark failed to designate the affidavit to the court.

A party is required to designate those materials which it contends support or preclude the entry of summary judgment. *American Management, Inc.,* 666 N.E.2d at 429. As the reviewing court, we are not free to search the entire record to determine the propriety of the trial court's entry of summary judgment. *Id.* Only those portions of the record that were specifically designated to the trial court comprise the entire record for appellate review. *Id.* T.R. 56, however, does not dictate the manner in which a party must designate the material to the trial court. *Id.* Thus, the parties have discretion in the manner in which they designate the material as long as they inform the trial court of the specific material upon which they rely in support of or in opposition to a motion for summary judgment. *Id.*

In the present case, the record reveals that Bankmark did not file a response to Star's motion for summary judgment. The record further reveals that Bankmark did not designate the affidavit to the trial court in opposition to Star's motion for summary judgment. Although Bankmark argues that the affidavit was before the trial court because it was attached to its motion to dismiss for lack of personal jurisdiction, nothing in the record indicates that Bankmark informed the trial court that it relied on this affidavit in opposition to Star's motion for summary judgment. As a result, the trial court did not err in ignoring Bankmark's affidavit.

Nevertheless, Bankmark argues that its failure to specifically designate the affidavit

---

7. Although concluding that Bankmark waived its arguments with regard to the admissibility of the affidavits, we do not mean to give license to the use of evidence of offers of compromise or settlement to prove liability or invalidity of a claim. The use of such evidence clearly violates Ind.

Rule of Evidence 408 and has a chilling effect on settlement as an alternative to litigation. Nevertheless, if Bankmark believed that the affidavit in question contained evidence of its settlement negotiations with Star, it was incumbent upon it to present its objection to the trial court.

should not have precluded its consideration because the trial court unfairly prohibited Bankmark from designating the affidavit. After Bankmark informed the trial court that it did not receive notice of, and as a result failed to appear at, the hearing on its motion to dismiss and Star's motion for summary judgment, the trial court gave each party an additional thirty days to request additional oral argument or file supplemental affidavits and briefs on each motion. R. at 5. In response, Bankmark requested a hearing on its motion to dismiss. However, the trial court did not conduct an additional hearing. Bankmark now contends that the trial court's denial of its request for an additional hearing on its motion to dismiss unfairly precluded it from orally designating the affidavit at trial.

Notwithstanding Bankmark's argument to the contrary, the trial court did not prevent Bankmark from designating its affidavit. Here, although the trial court gave each party an additional thirty days to respond to each motion, Bankmark chose not to request additional oral argument or file additional affidavits in opposition to Star's motion for summary judgment. Instead, Bankmark limited its request to a hearing on its motion to dismiss. It was incumbent upon Bankmark to designate any evidence offered in opposition to summary judgment and it did not do so. Under these circumstances, the trial court did not err in granting Star's motion for summary judgment.

### CONCLUSION

In sum, we hold that a trial court may properly presume, if the requirements of T.R. 37(B)(2) are satisfied, that a party's failure to comply with court-ordered discovery is an admission that its challenge to the court's personal jurisdiction is meritless. As a result, a trial court may prohibit a party from maintaining its motion to dismiss for lack of jurisdiction as a discovery sanction. In determining whether the imposition of this sanction is just, a trial court should consider (1) the sanctioned party's opportunity to comply with the discovery request and the court's orders; (2) the sanctioned party's previous agreements to cooperate with discovery; (3) the merits of the respondent's

claim that the trial court had personal jurisdiction over the sanctioned party; and (4) the warnings given to the sanctioned party prior to issuance of the sanction. Considering that Bankmark had ample opportunity to produce the requested documents, that it previously agreed to cooperate with discovery and that it failed to justify its noncompliance with the court's discovery order, we conclude that the trial court did not abuse its discretion in imposing this sanction. Finally, because Bankmark waived any impropriety in Star's affidavits and failed to properly designate its affidavit, we cannot conclude that the trial court erred in granting Star's motion for summary judgment.

The trial court's judgment is affirmed.

HOFFMAN and NAJAM, JJ., concur.