HOTMIX & BITUMINOUS
EQUIPMENT INC.,
Appellant–Plaintiff,

v.

HARDROCK EQUIPMENT CORP.,
Appellee–Defendant.

No. 29A02–9904–CV–285.

Court of Appeals of Indiana.

Nov. 17, 1999.

Russell T. Clarke, Jr., Emswiller Williams Noland & Clarke, Indianapolis, Indiana, Attorney for Appellant.

Jordan D. Church, Church Church Hittle & Antrim, Noblesville, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Hotmix & Bituminous Equipment, Inc., ("Hotmix") appeals the trial court's order granting Hardrock Equipment Corp., ("Hardrock") relief from judgment. Hotmix raises three issues for our review which we restate as:

1) whether the trial court erred in granting Hardrock's motion for relief from judgment;

2) whether Hardrock submitted to the jurisdiction of Indiana courts by filing a counterclaim; and

3) whether Hardrock waived the defense of lack of personal jurisdiction when it failed to respond to the summary judgment motion filed by Hotmix.

We affirm.

The relevant facts follow. On October 18, 1996, Hotmix, an Indiana corporation, filed a complaint in an Indiana court against Hardrock, a New York corporation, alleging that Hardrock had failed to pay $15,000 in commission allegedly due it pursuant to an agreement between the parties. On November 12, 1996, Hardrock filed an answer to Hotmix's complaint. In its answer, Hardrock asserted that Indiana courts had "no standing" and that the case was "beyond the courts [sic] jurisdiction." Record, p. 17. In addition to the answer, Hardrock filed a counterclaim with its answer against Hotmix for costs and expenses totaling $16,484 plus interest.

Hotmix then sent Hardrock a request for admissions. When Hardrock failed to respond despite an order compelling compliance, Hotmix moved for summary judgment based upon facts deemed admitted by virtue of Hardrock's failure to respond or object in a timely manner to the request for admissions. Hardrock also did not respond to the summary judgment motion. The trial court entered an order granting summary judgment in favor of Hotmix on September 12, 1997. On July 22, 1998, Hardrock filed a motion for relief from judgment, alleging that Indiana did not have personal jurisdiction, and therefore, the judgment was void. After a hearing, the trial court granted Hardrock's motion for relief from judgment, finding that such judgment was void for lack of personal jurisdiction.

Indiana Trial Rule 60(B) provides the mechanism for a party to obtain relief from the entry of a final judgment. See T.R. 60(B). The decision of whether to grant or deny a motion for relief from judgment is generally left to the sound, equitable discretion of the trial court. *Wolvos v. Meyer,* 668 N.E.2d 671, 678 (Ind.1996). We will not reverse the grant of such motion absent an abuse of discretion. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Miller v. Moore,* 696 N.E.2d 888, 889 (Ind.Ct.App. 1998). Additionally, we will not reweigh the evidence in conducting this review. *Gipson v. Gipson,* 644 N.E.2d 876, 877 (Ind.1994). However, the standard of review for the granting of a motion for relief from judgment made pursuant to Trial Rule 60(B)(6), alleging that the judgment is void, requires no discretion on the part of the trial court because either the judgment is void or it is valid. *Santiago v. Kilmer,* 605 N.E.2d 237, 239 (Ind.Ct.App. 1992), *reh'g denied, trans. denied.*

## A.

Hotmix contends that the trial court erred in granting Hardrock's motion for relief from judgment on the basis of lack of personal jurisdiction. In determining whether a nonresident defendant's contacts with the forum state are sufficient to confer personal jurisdiction, the traditional analysis focuses on: (1) whether Indiana's long arm statute authorizes the exercise of jurisdiction over the defendant; and (2) whether the exercise of jurisdiction would offend the Due Process Clause of the Fourteenth Amendment. *Yates–Cobb v. Hays*, 681 N.E.2d 729, 732 (Ind.Ct.App. 1997). However, because the purpose of Indiana's long arm statute is to allow jurisdiction to extend to the furthermost limits permitted by the Due Process Clause, the traditional two-step analysis collapses into a single search for what the outer limits of due process permit. *Id.*

Due process requires that 'the nonresident defendant have certain minimum contacts with Indiana before the courts of this state may exercise jurisdiction over him. *Dura–Line Corp. v. Sloan*, 487 N.E.2d 469, 470 (Ind.Ct.App.1986). These minimum contacts ensure that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

In order to find that the requisite minimum contacts are present, it must be shown that the nonresident defendant's contacts with Indiana were such that it should have reasonably anticipated being haled into court here. *Id.* This involves an examination of the quality, quantity, and nature of the defendant's activities, as well as the relationship of those activities with the forum state. *Woodmar Coin Center, Inc., v. Owen*, 447 N.E.2d 618, 621 (Ind.Ct. App.1983).

In the instant case, Hotmix and Hardrock communicated through interstate telephone calls and letters.[1] These communications culminated in Hotmix agreeing to show equipment located in Ohio to one of Hardrock's clients. The trial court, in its order granting Hardrock relief from judgment, found that:

"the undisputed facts with respect to whether or not [Hardrock] is subject to Indiana's long arm jurisdiction statute ... are that [Hotmix] and [Hardrock] engaged in numerous telephone calls, and some facsimile transmissions and letters. [Hardrock] is a New York corporation with its principle [sic] place of business in New York. [Hardrock] never appeared in Indiana and does not normally conduct business in Indiana. The equipment that was the subject of this transaction was located in Ohio, and that the parties in this lawsuit met only in

---

1. Hotmix alleges that Hardrock initiated the contact by telephoning it in Indiana. However, who made the first contact with who is not clear from the record, and the trial court did not make any finding as to this issue. In its answer, Hardrock denied it had contacted Hotmix by telephone in Indiana and inquired as to a piece of equipment for possible purchase by a client of Hardrock's. Hotmix acknowledges this denial, but then states that this fact was deemed admitted due to Hardrock's failure to respond to requests for admissions, and then further relies on Hardrock's statement in its affidavit accompanying the motion for relief from judgment that its "only contact with Indiana was through interstate calls and letters between New York and Indiana in which [Hardrock] arranged with [Hotmix] to have [Hotmix] show [Har-

drock's] Rhode Island Equipment in Ohio." Record, p. 58. The above quoted statement can hardly be characterized as an admission by Hardrock that it initiated the contact. Moreover, Hotmix's reliance on Hardrock's failure to respond to the request for admissions as establishing the fact that Hardrock is the party that initiated the contact is in error. The trial court determined that it did not have personal jurisdiction over Hardrock. If the trial court did not have personal jurisdiction over Hardrock, then the judgment is void and Hotmix may not rely on facts deemed admitted pursuant to a void judgment. *See Stidham v. Whelchel*, 698 N.E.2d 1152, 1154 (Ind.1998). In any event, we reach the same results regardless of who initiated the contact.

Ohio. Under these facts, Indiana courts do not have jurisdiction over [Hardrock]."

Record, p. 99. In support of its conclusion, the trial court cited *Dura–Line Corp. v. Sloan,* 487 N.E.2d 469 (Ind.Ct.App.1986) and *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753 (Ind.Ct.App.1991), *trans. denied.*

Hotmix contends that the trial court's reliance on *Pannette* and *Dura–Line* is misplaced. In *Dura–Line,* an Indiana resident contacted the nonresident defendant in Kentucky and inquired whether the defendant would pay her a commission if she were able to sell the defendant's equipment to a company in Minnesota. *Dura–Line,* 487 N.E.2d at 471. The resulting agreement was followed up by several phone calls and letters by the defendant to Indiana. *Id.* Additionally, the defendant made a social visit to the Indiana resident's home during which further sales prospects were discussed. *Id.* When the Indiana resident commenced an action against the nonresident Kentucky defendant, we held that the contacts were not sufficient to permit Indiana courts to exercise jurisdiction over the nonresident. *Id.* In support of our holding, we noted that the defendant was not generally engaged in business in Indiana, the defendant did not come to Indiana to offer or negotiate an agreement, the contact was initiated by the Indiana resident, and the services were performed in Indiana only to the extent that she might telephone someone in another state from her Indiana home. *Id.*

Hotmix alleges that *Dura–Line* is factually distinguishable from the case at hand because "the out of state company did not do any business in Indiana. It involved solicitations by an Indiana resident to customers located in Minnesota." Brief of Appellant, p. 16. In contrast, according to Hotmix, Hardrock purposefully directed some of its activities towards Indiana through numerous telephone calls, facsimile transmissions, and "solicit[ing] Hotmix for the sale of a piece of construction equipment for one of its clients," and therefore, should be subject to Indiana's jurisdiction. Reply Brief of Appellant, p. 3. Even assuming that Hardrock was the party that initiated the contact, that factor alone is inadequate to hold that the reasoning in *Dura–Line* is inapplicable to the case at bar. Although *Dura–Line* did state that the circumstances would more strongly support the finding of personal jurisdiction if the defendant was the party who had initiated the contact, the court did not base its holding on who initiated the contact. *See id.* Like the defendant in *Dura–Line,* Hardrock is not generally engaged in business in Indiana, its agents did not come to Indiana to offer or negotiate an agreement, and its contacts with Indiana consisted solely of interstate mailings and telephone calls. Moreover, similar to the situation in *Dura–Line,* the service that Hotmix provided was performed in Ohio, not Indiana.

In *Pannette,* the other case the trial court relied upon in support of its order, we held that Indiana courts did not have personal jurisdiction over a nonresident defendant where the defendant's sole contact with Indiana was through periodic telephone communications to place orders with the plaintiff. *Pannette,* 583 N.E.2d at 755. Although the defendant knew he was doing business with an Indiana company and telephoned and mailed checks to Indiana, the relationship between the parties was not commenced in Indiana, the defendant had not personally appeared or resided in Indiana, no contract negotiations occurred in Indiana, and the defendant did not maintain any offices or other businesses in Indiana. *Id.* "To find that a consumer has submitted to personal jurisdiction in a foreign state ... based upon an order for goods strains the boundaries of the minimum contacts requirement." *Id.* at 756.

According to Hotmix, the *Pannette* decision has been superceded by the more recent decisions of *Mullen v. Cogdell,* 643 N.E.2d 390 (Ind.Ct.App.1994), *reh'g de-*

*nied, trans. denied* and *Yates–Cobb v. Hays,* 681 N.E.2d 729 (Ind.Ct.App.1997).[2] Hotmix, in support of its position, also quotes Professor Harvey who opines that the holding in *Pannette* is incorrect.[3] However, contrary to Hotmix's assertion, the *Pannette* decision has not been superceded by more recent decisions. Rather, the different results reached in regards to personal jurisdiction in *Mullen* and *Yates–Cobb* are a product of the different factual settings. "Whether minimum contacts exist in a particular factual setting must be determined on a *case-by-case basis;* there are no hard and fast rules regarding the existence of minimum contacts." *Mullen v. Cogdell,* 643 N.E.2d at 397 (emphasis added).

The decision in *Mullen,* which Hotmix relies heavily on in support of its contention that Indiana did have personal jurisdiction over Hardrock, is easily distinguishable. In *Mullen,* the nonresident defendant purchased a home located outside of Indiana. *Mullen,* 643 N.E.2d at 395–396. In furtherance of this purchase, the defendant mailed copies of documents to the seller's agent in Indiana, which contained misrepresentations relating to the proposed sale. *Id.* at 396. Additionally, the defendant placed telephone calls to persons in Indiana, with such calls also consisting of misrepresentations. *Id.* Under the facts of the case, we held that the defendant's contacts with Indiana were sufficient to confer jurisdiction on the courts of this state because the alleged injury that was the subject of the suit was a result of the misrepresentations that had been directed towards residents in Indiana. *Id.* at 398. The contacts themselves were the misrepresentations.

Hotmix's reliance on *Woodmar Coin Center, Inc. v. Owen,* 447 N.E.2d 618 (Ind. Ct.App.1983), raises a different set of issues. In *Woodmar,* an Indiana business placed an advertisement for the sale of coins in the Wall Street Journal. *Id.* at 619. After seeing the advertisement, the Texas defendant placed a telephone call to Indiana regarding the coins. *Id.* Thereafter, substantial negotiations took place between the parties concerning the sale of the coins. *Id.* We held that Indiana courts had personal jurisdiction over the nonresident defendant because he had "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident." *Id.* at 621. Hotmix asserts that its case is similar to *Woodmar* in that personal jurisdiction may be found, even though Hardrock was never physically present in the state, because Hardrock solicited the business of an Indiana company and engaged in phone calls, letters, and facsimile transmissions with Indiana. Even assuming that Hardrock did initiate the contact with Hotmix, the present case is distinguishable because the subject of the alleged contract was

---

**2.** Hotmix argues that "[t]he *Pannette* decision appears to have [sic] superceded by more recent decisions *of the higher courts in Indiana.*" Appellant's Brief, p. 16 (emphasis added). This is a misstatement. Professor Harvey, whom Hotmix cites in support of its position, was discussing *Fetner v. Maury Boyd & Assoc., Inc.,* 563 N.E.2d 1334 (Ind.Ct.App. 1990) *reh'g denied, trans. denied,* a court of appeals decision, when he opined that the reasoning in *Fetner* suggests that the holding in *Pannette* was incorrect. Moreover, Hotmix does not cite any authority from the Indiana Supreme Court that would support the statement that "decisions of higher courts of Indiana" have superceded the holding in *Pannette.*

**3.** In its brief, Hotmix merely quotes text from Indiana Practice, Rules of Procedure, written by Professor Harvey. Beyond this quote, Hotmix does not develop an argument as to why the court's holding in *Pannette* is incorrect. It merely states that the case "has been criticized by scholars" and that "[t]he decision has been appropriately addressed by scholars as being incorrect." Brief of Appellant, p. 16; Reply Brief of Appellant, p. 5. Because Hotmix has not developed an argument, it has waived our review of this issue. *See Choung v. Iemma,* 708 N.E.2d 7, 13 (Ind. Ct.App.1999), *reh'g denied;* Ind. Appellate Rule 8.3(A)(7).

located in Ohio, not in Indiana, as was the case in *Woodmar*.[4]

The facts of this case, namely that a nonresident defendant who had never been in Indiana, but had engaged in numerous phone calls, letters, and facsimile transmissions with the forum state regarding property located in Ohio, do not compel the conclusion that the minimum contacts necessary to establish jurisdiction were present. Therefore, we hold that the trial court did not err in finding that Hardrock's contacts with Indiana were insufficient to confer personal jurisdiction over Hardrock. *See Wolvos*, 668 N.E.2d at 679.

### B.

 Hotmix next contends that Hardrock submitted to the jurisdiction of Indiana by filing a counterclaim with its answer. The law is clear that a party not otherwise subject to the personal jurisdiction of a court may nonetheless voluntarily submit himself to that court's jurisdiction by either seeking affirmative relief or by failing to object in a timely manner to the jurisdiction of the court. *Schneider v. Schneider*, 555 N.E.2d 196, 199 (Ind.Ct. App.1990). In the present case, Hardrock properly raised the issue of personal jurisdiction in its answer. *See State v. Omega Painting, Inc.*, 463 N.E.2d 287, 290 (Ind. Ct.App.1984), *reh'g denied*; Ind. Trial Rule 12. Notwithstanding Hardrock's timely assertion of such defense in its answer, Hotmix contends that Hardrock nevertheless submitted to the personal jurisdiction of the court by contemporaneously seeking affirmative relief from the court by filing a counterclaim, and therefore, is estopped from denying the court's personal jurisdiction. Certainly, a timely objection to personal jurisdiction may still be waived if subsequent actions by the defendant go beyond matters of defense and seek affirmative relief from the court. *Omega*

*Painting*, 463 N.E.2d at 292 n. 7. Filing a permissive counterclaim falls within this category. *Id.* However, filing a compulsory counterclaim is altogether a different matter.

 A compulsory counterclaim is a claim that arises out of the same "transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ind. Trial Rule 13(A.). "[T]he phrase 'transaction or occurrence' is to be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events." *Reddick v. Carfield*, 656 N.E.2d 518, 522 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* As such, two causes of action are said to arise from the same transaction or occurrence if there is a logical relationship between them, meaning that the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim. *Id.* Failure to file a compulsory counterclaim in the initial action results in that claim forever being barred. *Id.*

While the filing of a compulsory counterclaim is in most instances a request for affirmative relief, we conclude that such filing does not waive the defense of lack of personal jurisdiction where it is filed contemporaneously with an answer which properly raises personal jurisdiction as an issue. The case of *Omega Painting* is instructive on this point. In *Omega Painting*, the defendant filed a request for change of venue at the same time it filed its answer asserting a lack of personal jurisdiction. *Omega Painting*, 463 N.E.2d at 292. Even though a request for a change of venue has been deemed a request for affirmative relief, we held that

---

4. We note that there is some disagreement among the members of this court as to whether the holding in *Woodmar* in regard to personal jurisdiction is obiter dictum or is controlling precedent. *See Mullen*, 643 N.E.2d at 398 n. 2; *Harold Howard Farms v. Hoffman*, 585 N.E.2d 18, 21 (Ind.Ct.App.1992); *Pannette*, 583 N.E.2d at 758. Due to our resolution of this issue, however, we need not address this conflict.

such a request, when filed contemporaneously with or subsequent to the proper preservation of the jurisdictional question, does not act as a waiver of, or an estoppel to assert, the jurisdictional claim. *Id.* Our holding was premised on the notion that "once the defense of lack of personal jurisdiction is properly preserved, the defendant may proceed with a defense on the merits without waiving the jurisdictional issue." *Id.* Because a defendant who challenges the existence of personal jurisdiction may ultimately be deemed to be subject to the jurisdiction of the court and because the failure to timely file a compulsory counterclaim results in the defendant being estopped from later bringing that claim, it would hardly be equitable to prevent a defendant from simultaneously contesting jurisdiction and bringing a compulsory counterclaim. *See id.*

■ Accordingly, the inquiry becomes whether Hardrock's counterclaim was compulsory or permissive. Looking at the counterclaim, it is not immediately clear what it alleges. In fact, in its appellee's brief, Hardrock itself states that "the document ... is merely a continuation of the 'rantings' which constitute Hardrock's pro se Answer." Brief of Appellee, p. 9. Nonetheless, we construe the counterclaim to be for costs and expenses arising from the sale of the equipment located in Ohio, the same subject matter as that of Hotmix's complaint.[5] Accordingly, Hardrock's counterclaim arose from the same set of operative facts that was the subject matter of Hotmix's claim and as such, was compulsory. *See Reddick,* 656 N.E.2d at 522. Therefore, we hold that Hardrock did not submit to the jurisdiction of Indiana courts when it filed a compulsory counterclaim contemporaneously with its answer that

properly preserved the defense of lack of personal jurisdiction. *See Omega Painting,* 463 N.E.2d at 292.

## C.

■ Finally, Hotmix contends that Hardrock waived the defense of lack of personal jurisdiction when it failed to respond to Hotmix's motion for summary judgment. According to Hotmix, Hardrock may not simply rely on the fact that it raised the defense of lack of personal jurisdiction in its answer. Rather, Hardrock had an affirmative duty under Trial Rule 56 to produce evidence to establish a lack of jurisdiction and failure to do so allows "the court to engage in the presumption ... that Hardrock's claim of lack of personal jurisdiction was ... meritless." Brief of Appellant, p. 24. Hotmix relies on *Bankmark of Florida v. Star Fin. Card,* 679 N.E.2d 973 (Ind.Ct.App.1997), in support of its position. In *Bankmark,* the nonresident defendant filed a motion to dismiss based on lack of personal jurisdiction and thereafter failed to respond to requests for production, which partly pertained to the alleged lack of personal jurisdiction, even after a motion to compel had been granted. *Id.* at 975. The trial court denied the defendant's motion to dismiss based on lack of personal jurisdiction as a sanction pursuant to Trial Rule 37(B)(2)(b) for failure to produce the requested documents. *Id.* at 976. The trial court then granted summary judgment for the plaintiff. *Id.* We held that "the trial court may properly presume, if the requirements of T.R. 37(B)(2) are satisfied, that the defendant's failure to comply with the court's discovery orders is an admission that its challenge to the court's jurisdiction is meritless." *Id.* at 977. Therefore, "a trial

---

**5.** Several factors lead us to this conclusion. First, in its answer, Hardrock states that "[Hotmix] ... misrepresented his position and failed to properly represent the equipment. This caused many expensive problems of which he is well aware; although he has carefully avoided them in this action." Record, p. 17. Second, the answer itself is entitled "claim for costs and expenses pursuant to [the cause number assigned to Hotmix's

complaint for damages]." Record, p. 18. Additionally, when laying out the costs and expenses claimed, Hardrock states that "the following costs and expenses were a direct result of [Hotmix's] actions" and "unfortunately, I introduced my customers to [Hotmix] and I have paid for it with back charges ... in addition to the costs as described above." Record, p. 18.

court may prohibit a party from maintaining its motion to dismiss for lack of jurisdiction as a discovery sanction." *Id.*

Hardrock's reliance on *Bankmark* is misplaced. The instant appeal does not involve the propriety of asserting jurisdiction as a discovery sanction, the crux of the holding in *Bankmark.* Moreover, *Bankmark* does not involve an appeal from the grant of relief from judgment in favor of the defendant as is the case here. Most importantly, *Bankmark* does not stand for the proposition that failure to respond to a motion for summary judgment results in a waiver of the defense of absence of personal jurisdiction.

The case at hand is more analogous to a defendant who chooses to ignore a pending proceeding and takes the risk that a subsequent challenge to personal jurisdiction will prevail. *See, e.g., Stidham v. Whelchel,* 698 N.E.2d 1152, 1156 (Ind.1998). Here, Hardrock filed an answer in which it asserted that the courts of Indiana did not have personal jurisdiction over it. In reliance on this objection, Hardrock chose not to take further action in regards to discovery or responding to Hotmix's summary judgment motion. By choosing this course of action, Hardrock took the risk that the trial court would grant summary judgment in Hotmix's favor and then deny any subsequent motions for relief from judgment. Although risky, this was a course that Hardrock was entitled to take. Therefore, in the absence of any action seeking affirmative relief from the court, Hardrock did not waive its right to contest the jurisdiction of the court by failing to respond to Hotmix's summary judgment motion. *See Schneider,* 555 N.E.2d at 199.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

BAKER, J., and MATTINGLY, J. concur.